IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RICARDO LOPEZ-VERA,              )
                                 )
                Petitioner,      )
                                 )
        v.                       )    1:12CV55
                                 )    1:09CR226-1
UNITED STATES OF AMERICA,        )
                                 )
                Respondent.      )

## MEMORANDUM OPINION AND ORDER

*Pro se* Petitioner Ricardo Lopez-Vera moves to vacate, set
aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc.
35.)[1]  He had pled guilty to illegally re-entering the country
after his conviction for a felony under 8 U.S.C. §§ 1326(a) and
(b)(1) and, on May 7, 2010, was sentenced to eighty-seven months
of imprisonment for the illegal re-entry conviction and a
consecutive sentence of eighteen months of imprisonment for a
supervised release revocation as to a prior conviction under
violation of § 1326(a). (Docs. 17, 21, 28, 30.)  His appeal was
unsuccessful. See United States v. Lopez-Vera, 432 F. App'x 244
(4th Cir. 2011).

Following his appeal, Lopez-Vera filed his current §
2255 motion, a supporting brief, and a "supplement" to his motion.
(Docs. 35, 36, 38.)  His § 2255 motion raised two grounds for
relief, and his supplement raised an additional ground. (Docs.

---

[1] This and all subsequent record citations are to case no. 1:09CR226-1.

35, 38.)  The United States filed a response (Doc. 45), and Lopez-Vera filed a reply (Doc. 51), a "Status Report and Motion to Supplement with New Case Citation" (Doc. 52), and a second "Status Report" (Doc. 53).  The court allowed Lopez-Vera to amend his § 2255 motion to raise another ground for relief pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and required the United States to respond to his subsequent "status reports." (Doc. 54.)  The United States then filed a supplemental response.  (Doc. 55.)  The matter is now ready for consideration.

For the reasons set forth below, Lopez-Vera's motion will be denied.

## I.  STANDARD OF REVIEW

A petitioner collaterally attacking his sentence or conviction must prove by a preponderance of the evidence that "his sentence or conviction was imposed in violation of the Constitution or laws of the United States, . . . that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack."  28 U.S.C. § 2255; see also Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958); Almon v. United States, 302 F. Supp. 2d 575, 579 (D.S.C. 2004).  The court construes Lopez-Vera's pro se motions liberally.  See Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Fields v. Attorney Gen. of State of Md., 956 F.2d 1290, 1298 n.20 (4th Cir. 1992).  The record supporting the § 2255 motion will be considered in its entirety.

## II.  ANALYSIS

In total, Lopez-Vera raises five grounds for relief.  First, he alleges that he was denied the effective assistance of counsel when his attorney threatened to withdraw as counsel "should [Lopez-Vera] not enter a plea of guilty," or "change[] his mind about pleading guilty, or withdr[a]w his plea of guilty for any reason." (Doc. 35 at 9.)  Second, Lopez-Vera contends that he was denied the effective assistance of counsel when his attorney failed to object to the court's characterization of a prior state court felony, resulting in an increased prison sentence.  (Id. at 10–11.)  Third, citing Carachuri-Rosendo v. Holder, 560 U.S. 563 (2010), Lopez-Vera argues that his "initial deportation may not qualify as a prior deportation under 8 U.S.C. § 1326(a), and may no longer support the enhanced term of imprisonment in the underlying prosecution of him under 8 U.S.C. § 1326(b)." (Doc. 38 at 1.)  Fourth, he contends that the trial court erred in determining that his prior California burglary conviction justified a guideline enhancement.  (Docs. 52, 53.)  Finally, he asserts another claim of ineffective assistance for his counsel's failure to move for a downward departure pursuant to U.S.S.G. § 5K3.1.  (Doc. 53 at 7–8.)  As explained below, each of these claims fails.

## A. Ineffective Assistance of Counsel Claim Relating to Guilty Plea

Lopez-Vera first argues that he was denied the effective assistance of counsel when his attorney threatened to withdraw from representation "should [Lopez-Vera] not enter a plea of guilty, change[] his mind about pleading guilty, or withdr[a]w his plea of guilty for any reason . . . ." (Doc. 35 at 9.) Specifically, he alleges that counsel repeatedly told him that counsel "[did not] want to go up against [the Government] in a lengthy trial with [Lopez-Vera's] past criminal history," and "if [Lopez-Vera] [did not] accept th[e] plea agreement, [counsel] will have to withdraw from the case and [Lopez-Vera] can do whatever it is that [he] want[s] to do on [his] own." (Doc. 36 at 15–16.) Additionally, Lopez-Vera claims that whenever he would try to discuss his past criminal history with counsel, his attorney would become "very angry, distraught, and frustrated" and tell Lopez-Vera why he should "accept the plea agreement that [counsel] worked so hard to negotiate for [him]." (Id. at 16.) Lopez-Vera also claims that his counsel told him that if he failed to accept the plea agreement, "not only are things going to go badly for [him], but [counsel] will withdraw from the case and [Lopez-Vera] will wind up with ten years." (Id. at 16–17.) Lopez-Vera also essentially contends that he knew that his prior State conviction for burglary was insufficient to warrant a sixteen-level guideline

enhancement, that counsel promised he would contest this issue and oblige the Government to prove the details of the conviction, that counsel failed to follow up on his promise, and that counsel ultimately coerced him into submitting to the erroneous guideline calculation. (Id. at 14-17.) Lopez-Vera alleges that were it not for his attorney's threats to withdraw, he would not have pled guilty. (Id. at 35.)

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner bears the burden of affirmatively showing both deficient performance and prejudice. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). A petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), as amended (Aug. 12, 1992) (holding that, in order to obtain an evidentiary hearing, a habeas petitioner must come forward with some evidence that the claim might have merit), abrogation on other grounds recognized by Yeatts v. Angelone, 166 F.3d 255, 261 n.4 (4th Cir. 1999).

When a petitioner raises an ineffective assistance claim in the context of a guilty plea, he must show that the attorney's performance fell below the standard of attorney competence —

"reasonably effective assistance." Strickland, 466 U.S. at 680.

"Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Second, to show prejudice following a guilty plea, a petitioner must establish that there is a reasonable probability that, but for counsel's allegedly deficient conduct, he would not have pled guilty but would have gone to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). The court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010) (citing Roe v. Flores-Ortega, 528 U.S. 470, 480, 486 (2000)). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

Where "a defendant is represented by counsel when making his guilty plea, that plea is presumed valid when later attacked in a habeas corpus proceeding. In order to rebut that strong presumption of validity, the defendant must make a factual showing that his plea of guilt was not voluntary and intelligent." United States v. Custis, 988 F.2d 1355, 1363 (4th Cir. 1993) (citation omitted), aff'd, 511 U.S. 485 (1994). "[S]tatements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing court in accepting a plea constitute a formidable barrier to attacking the plea." United

States v. Wilson, 81 F.3d 1300, 1308 (4th Cir. 1996) (quoting United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992)) (quotation marks omitted). "In the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005).

Claims of ineffective assistance of counsel on appeal are also judged through the Strickland test. See Lawrence v. Branker, 517 F.3d 700, 708–09 (4th Cir. 2008). Appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745, 752–53 (1983); see also Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Ineffective assistance of appellate counsel can be shown by demonstrating that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Bell v. Jarvis, 236 F.3d 149, 180 (4th Cir. 2000) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).

Here, the record presents a formidable, and indeed insurmountable, barrier to Lopez-Vera's claim. First, under oath

at his Rule 11 hearing, Lopez-Vera admitted facts that directly controvert the statements in his present motion. (Doc. 28 at 3.) He admitted that he reviewed and understood the indictment, had fully discussed the charges with his attorney, had sufficient time to speak with his attorney about the case, had discussed possible defenses with his attorney, and that he was "fully satisfied with the services of [his counsel]" and his "representation" of him. (Id. at 5–6.) The court then reviewed the plea agreement with Lopez-Vera, who agreed that all the terms of the agreement were contained therein and further agreed that he understood the terms in the agreement. (Id. at 6–8.) Lopez-Vera then indicated that he had sufficient opportunity to read the plea agreement and to discuss it with his attorney and that he had no questions for counsel or the court as to the plea agreement. (Id. at 8.) Importantly, he acknowledged that no one had made any threats or promises to him other than those in the plea agreement in an effort to persuade him to plead guilty. (Id. at 8–9.) He also testified that no one had in any way attempted to force him to plead guilty against his wishes. (Id. at 9.)

The court then reviewed the maximum penalties associated with the plea, which Lopez-Vera agreed he understood. (Id. at 9.) The court further reviewed the sentencing process with him, which Lopez-Vera indicated he understood. (Id. at 10–11.) Lopez-Vera indicated that he understood that his guideline range might

ultimately be different from any estimate provided to him by his attorney. (Id. at 11.) Next, the court reviewed with Lopez-Vera his constitutional rights, including his right to plead "not guilty" and to persist in that plea, which he stated he understood. (Id. at 12-14.) Lopez-Vera indicated further that he understood that if he pled guilty it was highly unlikely the decision would ever be reversed. (Id. at 14.) The court next reviewed the elements of the charge, and Lopez-Vera stated he understood them. (Id. at 14-15.) Lopez-Vera then pled guilty to the offense, acknowledging that he was in fact guilty. (Id.)

Thus, while Lopez-Vera indicates that he was pressured by his attorney into pleading guilty, he stated at his change of plea hearing that he was "fully satisfied with the services," "counsel," and "representation" of his attorney; acknowledged under oath that no one had made any threats or promises to him other than those in the plea agreement in an effort to persuade him to plead guilty; indicated further that no one had in any way attempted to force him to plead guilty against his wishes; testified that he understood the maximum penalty he faced and indicated further that the guideline range might ultimately be different from any estimate provided to him by his attorney. In short, Lopez-Vera has failed to allege or demonstrate extraordinary circumstances that would justify disregarding the sworn statements made at his Rule 11 hearing.

Even further, after he pled guilty but before he was sentenced, Lopez-Vera again made statements directly contradicting the current allegations in his motion. Before sentencing, Lopez-Vera filed two motions with the court: one to dismiss the case for ineffective assistance of counsel and the other for the appointment of new counsel. (Docs. 18, 19, 20.) The court held a hearing on these motions on March 9, 2010. (Doc. 29.) At this hearing, the court asked Lopez-Vera whether counsel "ever pressure[d] [him] to enter into a plea agreement." (Id. at 11.) Lopez-Vera responded, "No. No. He hasn't pressured me *at all* because we haven't had much communication." (Id. (emphasis added).) The court further asked Lopez-Vera if counsel ever told him that the court would "get mad at [him] if [he] didn't sign the plea agreement," to which Lopez-Vera again responded "No, *not at all*." (Id. (emphasis added).) The court even inquired whether Lopez-Vera wished to have another lawyer appointed, and Lopez-Vera declined stating, "I prefer to stay with him." (Id. at 4.) The court further expressed that it was "perplexed" why Lopez-Vera would claim his lawyer was ineffective but then want to keep him, and Lopez-Vera stated, "now it is okay" and "I do wish to stay with him." (Id. at 5-6.) Lopez-Vera reiterated that he wished to have any request for new counsel deemed withdrawn. (Id. at 5.) Allowing Lopez-Vera to withdraw his motions on the basis of these denials, the court found

"no evidence of any ineffective assistance of counsel in this case." (<u>Id.</u> at 13–14.)

Therefore, in light of Lopez-Vera's statements at both his Rule 11 hearing and the subsequent motions hearing, his claim that his counsel pressured him into pleading guilty fails.

**B.  Ineffective Assistance of Counsel Claim Concerning Failure to Object to Guideline Calculation**

Lopez-Vera next contends that he was denied the effective assistance of counsel when his attorney failed to object to the court's acceptance of his underlying California state felony as a "crime of violence" during the May 7, 2010 sentencing hearing, which led to a sixteen-level enhancement of his offense level under U.S.S.G. § 2L1.2(b)(1)(A)(ii).  (Doc. 36 at 19.)  He argues that counsel should have objected because his underlying conviction had "never been established to be a qualifying prior conviction." (<u>Id.</u>)  Lopez-Vera also contends that counsel was ineffective for failing to investigate this issue sufficiently.  (<u>Id.</u> at 17.)  He further faults counsel for failing to require the Government to provide documentation of his prior state court conviction that would support the aforementioned enhancement.  (<u>Id.</u> at 19–20, 26.)

Section 2L1.2(b)(1)(A)(ii) of the U.S. Sentencing Guidelines provides for a sixteen-level enhancement when a defendant was previously deported after "a conviction for a felony that is . . . (ii) a crime of violence . . . ."  Application Note 1(B)(iii)

to U.S.S.G. § 2L1.2 defines a "[c]rime of violence" to include the "burglary of a dwelling."  At the May 7, 2010 sentencing, the court adopted, without any objection, Lopez-Vera's presentence report ("PSR"), which calculated a sixteen-level enhancement under § 2L1.2(b)(1)(A)(ii) on the grounds that Lopez-Vera's prior conviction of first-degree burglary in violation of California Penal Code § 459 constituted a crime of violence.[2]  (Doc. 30 at 3-5; Doc. 58 ¶¶ 11, 20.)  Lopez-Vera's PSR describes his burglary conviction as follows:

> On May 4, 1994, the defendant broke into a residence on Salsipuedes Street, Santa Barbara, California. According to the records with the Santa Barbara Police Department, the defendant informed the arresting officer that Ricardo Sanchez, Domingo Bustamountes, also known as Domingo Gustamante and Domingo Bustamantes Medina, and a fourth subject (name unknown) were his accomplices.  They entered through a bedroom window and stole a television, camcorder, two portable stereos, and a VCR.  The victim listed the defendant as a suspect. The officer located the defendant and searched his residence.  During the search of the residence, the officer located the stolen camcorder.  The defendant admitted breaking into the residence because the victim owed him money.

(Doc. 58 ¶ 20.)  Referring to this 1994 felony, the PSR further lists a conviction in 2003 for illegal reentry after being deported following an aggravated felony, in violation of 8 U.S.C. § 1326. (Id. ¶ 24.)  Lopez-Vera's counsel stated that he had reviewed the PSR with Lopez-Vera, who also stated he had reviewed the PSR with

---

[2] California Penal Code § 459 provides:  "Every person who enters any house, room, apartment . . . with the intent to commit grand or petit larceny or any felony is guilty of burglary."

his lawyer and was satisfied he understood the contents of the report. (Doc. 30 at 3.)

Lopez-Vera now contends that counsel was constitutionally ineffective for failing to object to this enhancement at sentencing because, had he done so, the enhancement would not have been applied and he would have received a significantly shorter prison sentence. (Doc. 36 at 19.) Under the governing law at the time of Lopez-Vera's sentencing in 2010, however, it was not unreasonable for counsel to have believed that the sentencing enhancement was appropriate.

In Taylor v. United States, 495 U.S. 575 (1990), the Supreme Court held that, for purposes of applying a federal sentence enhancement for a prior "violent felony" conviction under 18 U.S.C. § 924(e), the crime of "burglary" does not depend upon how a State chooses to define the offense.[3] Id. at 590. Rather, the Supreme Court held that the offense of "burglary" must have a "uniform" definition for purposes of sentence enhancement and adopted a "generic meaning" of the offense: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Id. at 592, 598 (citations omitted).

---

[3] Subsequent to Lopez-Vera's May 7, 2010 sentencing, the Fourth Circuit observed, "We rely on precedents evaluating whether an offense constitutes a 'crime of violence' under the Guidelines interchangeably with precedents evaluating whether an offense constitutes a 'violent felony' under the ACCA." United States v. King, 673 F.3d 274, 279 n.3 (4th Cir. 2012); see also United States v. Bonilla, 687 F.3d 188, 190 n.3 (4th Cir. 2012).

Therefore, under this "categorical approach," if a statutorily-defined crime has the same basic elements as the Supreme Court's generic version of burglary, then that crime constitutes burglary for sentence enhancement purposes under § 924(e). Id. at 599.

While the Supreme Court held that a sentencing court must use this categorical approach and "look[] only to the statutory definitions of . . . prior offenses," the Court's opinion acknowledged that in a "narrow range of cases," to determine whether "a jury was actually required to find all the elements of [the] generic [crime]," a sentencing court may look to certain extra-statutory materials to determine whether a conviction can be used for an enhancement. Id. at 599, 602 (noting, for example, that a state burglary statute that included entry of an automobile as well as of a building would allow for consideration of extra-statutory materials).

As recently as 2006, courts in other circuits interpreted Taylor to permit a California Penal Code § 459 conviction to qualify as a "crime of violence" under § 2L1.2's sentencing enhancement. See United States v. Murillo-Lopez, 444 F.3d 337, 344–45 (5th Cir. 2006) (holding that burglary conviction under § 459 could constitute "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii)); United States v. Figueroa-Arroyo, 158 F. App'x 21, 22 (9th Cir. 2005) ("The 1990 Information — to which Figueroa-Arroyo pleaded guilty — alleged that he 'did *willfully*

and *unlawfully* enter an inhabited dwelling house and trailer coach and inhabited portion of a building occupied by Chad Coleman, with the intent to commit larceny and any felony.' . . . [S]uch language charges a violent felony." (citations omitted) (quoting United States v. Williams, 47 F.3d 993, 995 (9th Cir. 1995))); see also United States v. Huizar, 688 F.3d 1193, 1194–95 (10th Cir. 2012) (assuming, without deciding, that a § 459 burglary could qualify as "crime of violence," meriting a sixteen-level sentencing enhancement); United States v. Williams, 47 F.3d 993, 994–95 (9th Cir. 1995) (concluding that a conviction pursuant to § 459 qualified as violent felony under U.S.S.G. § 4B1.2 where defendant pleaded no contest to charges that he "did willfully and unlawfully enter the residence, and building occupied by Gregory M. Gawlik, with the intent to commit larceny"), abrogated by Young v. Holder, 697 F.3d 976, 986 & n.8 (9th Cir. 2012); United States v. Dunn, 946 F.2d 615, 620 (9th Cir. 1991) ("The information to which defendant pleaded guilty charged him with unlawfully entering another man's apartment with the intent to commit larceny. Therefore, the district court's sentencing enhancement [for the violent felony of burglary] for Count 1 was correct and is affirmed.").

In 2009, however, a panel of the Ninth Circuit held that a § 459 conviction could not constitute a "crime of violence" under § 2L1.2. United States v. Aguila-Montes, 553 F.3d 1229, 1231,

1234 (9th Cir. 2009) (granting rehearing on prior 2008 panel decision which found that "crime of violence" enhancement applied). The Ninth Circuit panel reasoned that, because a § 459 burglary conviction required no finding of "unlawful or unprivileged" entry as required by Taylor, a § 459 conviction could not serve as "crime of violence" under § 2L1.2. Id. at 1232–34. On February 3, 2010, before Lopez-Vera's May 7, 2010 sentencing, the Ninth Circuit voted to rehear the case en banc, however, and stated that the prior opinion "shall not be cited as precedent by . . . the Ninth Circuit." United States v. Aguila-Montes De Oca, 594 F.3d 1080, 1080 (9th Cir. 2010). At the time of Lopez-Vera's sentencing, therefore, Aquila-Montes remained undecided and unavailable as precedent.

In the Fourth Circuit at the time of Lopez-Vera's 2010 sentencing, § 2L1.2's application to § 459 convictions had not been directly addressed. That being said, the Fourth Circuit interpreted Taylor to embrace a "modified-categorical" approach "[w]here . . . a statute broadly criminalizes conduct that could be 'generally committed' in multiple ways, some violent and some not." See United States v. Bethea, 603 F.3d 254, 256–57 (4th Cir. 2010) (quoting Chambers v. United States, 555 U.S. 122, 125 (2009)). The Fourth Circuit applied this modified categorical approach in cases involving both divisible criminal statutes — which set out one or more of the statutory elements in the

alternative (e.g., burglary involving entry into a building or an automobile) — and non-divisible criminal statutes.  See Rivas v. Mukasey, 257 F. App'x 639, 641 (4th Cir. 2007) (noting that modified categorical approach would apply to divisible statute);[4] United States v. Harcum, 587 F.3d 219, 223–25 (4th Cir. 2009) (applying modified categorical approach to non-divisible criminal statute); United States v. Simms, 441 F.3d 313, 315 (4th Cir. 2006) (same); see also United States v. Aparicio-Soria, 740 F.3d 152, 156 (4th Cir. 2014) (en banc) (abrogating Harcum and Simms, observing that the Fourth Circuit previously applied the modified categorical approach to a criminal statute containing "indivisible elements").  The modified categorical approach allowed a court "to review 'charging documents filed in the court of conviction, or . . . recorded judicial acts of that court,' to determine whether the defendant's crime 'necessarily' constituted the type of generic conduct" that would satisfy the offense's definition. Bethea, 603 F.3d at 256–57 (quoting Shepard v. United States, 544 U.S. 13, 20 (2005)).

Here, the underlying State conviction that triggered the enhancement was for burglary under California Penal Code § 459 — a statutorily defined offense with indivisible elements that is broader than the generic definition of burglary set forth in

---

[4] Unpublished opinions are not binding precedent in this circuit.

Taylor. See Taylor, 495 U.S. at 591 (noting that Cal. Penal Code § 459 is defined "so broadly as to include shoplifting and theft of goods from a 'locked' but unoccupied automobile"); see also United States v. Painter, 400 F.3d 1111, 1113 (8th Cir. 2005) ("This definition [of § 459] goes beyond generic burglary in Taylor because it is not limited to unlawful or unprivileged entries into buildings."). As noted above, where a criminal statute is overbroad and prohibits both qualifying and non-qualifying conduct, the Fourth Circuit (at the time of Lopez-Vera's sentencing) permitted application of the modified-categorical approach to evaluate the character of the prior offense to determine whether it supported the enhancement, reviewing "charging documents filed in the court of conviction, or . . . recorded judicial acts of that court" to make that determination. Bethea, 603 F.3d at 256–57 (quoting Shepard v. United States, 544 U.S. 13, 20 (2005)) (internal quotations omitted).

The charging document for Lopez-Vera's California burglary count provides:

> On or about May 4, 1994, in the County of Santa Barbara, State of California, the crime of RESIDENTIAL BURGLARLY, in violation of PENAL CODE SECTION 459, a Felony, was committed by RICARDO LOPEZ VERA, who did willfully and unlawfully enter an inhabited dwelling house and trailer coach and inhabited portion of a building occupied by BAUDELIO ARELLANO-VILLEGAS, with the intent to commit a larceny and any felony. It is further alleged that the above offense is a serious felony within the meaning of Penal Code Section 1192.7(c)(18). It is further alleged

18

> that the above offense is a violation of Penal Code
> Section 462(a).

(Doc. 45-2 at 2.) This document demonstrates that Lopez-Vera admitted to and was convicted of knowingly and unlawfully entering an inhabited dwelling with the intent to commit felony larceny. Thus, given the prevailing and controlling law at the time Lopez-Vera was sentenced in 2010, his counsel was not unreasonably deficient for believing Lopez-Vera's prior § 459 conviction was sufficient to apply the § 2L1.2 "crime of violence" enhancement.

In August of 2011, after Lopez-Vera's sentencing and appeal to the Fourth Circuit (but days before his time to file a petition for writ of certiorari with the Supreme Court expired), in United States v. Aguila-Montes de Oca, 655 F.3d 915 (9th Cir. 2011) (en banc), the Ninth Circuit — then sitting en banc — held that, for an indictment under California Penal Code § 459 to constitute generic burglary, it would have to charge that a defendant "did willfully and unlawfully enter a private inhabited dwelling house *without the owner's consent*." Id. at 946 (emphasis added). Counsel, however, was not deficient for failing to observe this development. A criminal defendant has no constitutional right to assistance of counsel to pursue a petition for writ of certiorari from the Supreme Court. See Wainwright v. Torna, 455 U.S. 586, 587 (1982) ("A criminal defendant does not have a constitutional right to counsel to pursue . . . applications for review in this

19

Court."); <u>Ross v. Moffitt</u>, 417 U.S. 600, 617–18 (1974); <u>Wyatt v. United States</u>, 574 F.3d 455, 459 (7th Cir. 2009) ("[A] criminal defendant has no constitutional right to counsel to pursue a petition for a writ of certiorari. And where there is no constitutional right to counsel, there cannot be constitutionally ineffective assistance of counsel."); <u>Moscol v. United States</u>, No. 5:07-CR-3-01-F, 2010 WL 4704403, at *2 (E.D.N.C. Nov. 12, 2010). Moreover, the Fourth Circuit has held that counsel is not deficient for failing to object to an issue on which the Supreme Court has granted a writ of certiorari, <u>Kornahrens v. Evatt</u>, 66 F.3d 1350, 1360 (4th Cir. 1995), or, more specifically here, failing to be aware of and raise direct contrary authority of other circuits, <u>Honeycutt v. Mahoney</u>, 698 F.2d 213, 217 (4th Cir. 1983) ("While some may contend that counsel, nevertheless, should have been aware of and raised the recent law of a lone federal circuit court, we simply do not agree that failure to do so is indicative of incompetence."). <u>See also</u> <u>United States v. Mellor</u>, No. 7:07cr3, 2010 WL 3585892, at *9 (W.D. Va. Sept. 9, 2010) ("Given the inconclusive array of legal authority at the time of [the defendant's] sentencing, counsel's failure to argue the [Guideline] issue does not fall foul of the <u>Strickland</u> standard. The Fourth Circuit has never held that the mere failure to cite favorable but non-binding decisional authority constitutes ineffective assistance of counsel."); <u>Gregory v. United States</u>,

109 F. Supp. 2d 441, 458 (E.D. Va. 2000) ("[A]n attorney is not constitutionally deficient for failing to research the law of other circuits."), <u>aff'd</u>, 30 F. App'x 55 (4th Cir. 2002).

Consequently, at the time of sentencing and on appeal, counsel for Lopez-Vera did not perform below the reasonable standard for defense attorneys by failing to make an objection that could reasonably have been thought precluded by circuit precedent. <u>See United States v. Higgs</u>, 663 F.3d 726, 739 (4th Cir. 2011) (noting the existence of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," (quoting <u>Roach v. Martin</u>, 757 F.2d 1463, 1476 (4th Cir. 1985))).

In 2013, long after Lopez-Vera's direct appeal was final, the Fourth Circuit abrogated its decisions permitting the application of the modified categorical approach to non-divisible criminal statutes. <u>See Karimi v. Holder</u>, 715 F.3d 561, 567–68 (4th Cir. 2013) (abrogating its <u>Harcum</u> and <u>Simms</u> decisions and holding that the Fourth Circuit had previously applied the modified categorical approach to a non-divisible criminal statute similar to California Penal Code § 459); <u>see also Aparicio-Soria</u>, 740 F.3d at 155-56 (noting abrogation of several prior cases applying the modified categorical approach to a criminal statute containing "indivisible elements and therefore . . . not amenable to the modified categorical approach"). As a result, the Fourth Circuit discontinued application of the modified categorical approach to

indivisible criminal statutes like § 459.  Instead, for determining the application of indivisible criminal statutes like § 459 to sentencing enhancements like § 2L1.2's "crime of violence" enhancement, the Fourth Circuit required use of Taylor's categorical approach, which again requires § 459's definition of burglary to have the same basic elements as the Supreme Court's generic version of burglary.

Then, later in 2013, the Supreme Court in Descamps v. United States, 133 S. Ct. 2276 (2013), held that, under Taylor's categorical approach, a conviction under § 459 could not qualify as a generic burglary and thus constitute a "violent felony" for purposes of 18 U.S.C. § 924(e).  Id. at 2285–86 (stating that "because California, to get a conviction, need not prove that Descamps broke and entered . . . a § 459 violation cannot serve as an ACCA [violent felony] predicate").  In light of the precedent existing at the time of Lopez-Vera's May 7, 2010 sentencing and appeal, however, counsel was not objectively unreasonable for failing to anticipate these subsequent developments in the law. See Strickland, 466 U.S. 668; New v. United States, 652 F.3d 949, 952 (8th Cir. 2011) ("A failure to raise arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services 'outside the wide range of professionally competent assistance' sufficient to satisfy the Sixth Amendment." (citing Strickland, 466 U.S. at 690)); Smith v.

Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999) ("[T]he rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized . . . ." (quoting 2 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice 502 (4th ed. 1996))). Therefore, counsel's performance was not deficient under Strickland by failing to raise the applicability of U.S.S.G. § 2L1.2(b)(1)(A)(ii).

### C. Qualifying Deportation Claim

In his "Status Report/Motion for Leave to Supplement Motion to Vacate," Lopez raises an issue under Carachuri-Rosendo v. Holder, 560 U.S. 563 (2010).[5] (Doc. 38 at 1–2.) Citing Carachuri-Rosendo, Lopez-Vera contends that his "initial deportation may not qualify as a prior deportation under 8 U.S.C. § 1326(a), and may no longer support the enhanced term of imprisonment in the underlying prosecution of him under 8 U.S.C. § 1326(b)." (Id.) This claim fails for a number of reasons.[6]

Carachuri-Rosendo examined a provision of the Immigration and

---

[5] Lopez-Vera's initial supplement (Doc. 38) requested amendment of his § 2255 motion to include this issue related to Carachuri-Rosendo. According to Federal Rule of Civil Procedure 15(a), leave to amend should be freely given when justice requires. The United States makes no argument that this claim is barred by 28 U.S.C. § 2255(f)'s statute of limitations. The court will, therefore, permit Lopez-Vera to amend his § 2255 motion to include this claim. To the extent Lopez-Vera seeks the court's permission to file additional briefing on this issue, the court finds it unnecessary.

[6] The United States never argued that this claim was procedurally defaulted.

Nationality Act, 8 U.S.C. § 1229b(a)(3), allowing an alien to seek cancellation of removal if the alien has not been convicted of an "aggravated felony." Carachuri-Rosendo, 560 U.S. at 566-67. The Supreme Court held that the defendant's drug possession conviction was not an "aggravated felony" under § 1229(a)(3) and rejected any attempt to consider "facts not at issue in the crime of conviction . . . to determine whether Petitioner *could have* been charged with a federal felony." Id. at 575-76, 580.

First, Lopez-Vera's case is both legally and factually distinguishable from Carachuri-Rosendo. The application of § 1327(a) and (b)(1) require no consideration of the Immigration and Nationality Act or, more importantly, whether a State-court drug conviction qualifies as an "aggravated felony." Section 1326(a) concerns deportations and removals of individuals from the United States followed by illegal re-entry into the United States and does not concern aggravated felonies. Section 1326(b)(1) contains a sentencing enhancement for those removals subsequent to a conviction for a "felony" — not an "aggravated felony." Thus, Carachuri-Rosendo has little application to Lopez-Vera's case.[7]

_____

[7] Lopez-Vera also mentions United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) in contending he is entitled to relief under Carachuri-Rosendo. (Doc. 38 at 2.) He, however, makes no argument as to how Simmons applies to his argument about his prior deportation. To the extent that Lopez-Vera attempts to challenge the application of § 1326(b)(1)'s enhancement for a prior "felony" conviction, his prior conviction under California Penal Code § 459 in the first degree and prior conviction under § 1326 both constitute "felonies." See United States v. Savillon-Matute, 636 F.3d 119, 122 n.5 (4th Cir. 2011) (citing

24

Second, Lopez-Vera argues that his initial deportation "may" not qualify as a deportation under § 1326(a) and "may no longer qualify" because the deportation was voluntary. (Doc. 38 at 1-2, 5.) He, however, provides nothing more than these conclusory allegations and offers no evidence to support his claim. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." (quoting United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000))), cert. denied, 135 S. Ct. 47 (2014); Jones v. Polk, 401 F.3d 257, 269-70 (4th Cir. 2005) ("[Petitioner] presents only conclusory and speculative allegations as support for his request for an evidentiary hearing. Such allegations do not trigger the right to a hearing."). Moreover, the factual basis, which Lopez-Vera agreed was accurate at his change of plea, indicates that he was "ordered removed/deported" in 1994 and was "removed/deported" again in 2008 pursuant to a "Warrant of Removal/Deportation." (Doc. 16 at 1-2; Doc. 28 at 15-16; see also Doc. 58 ¶¶ 3-7.) Nothing in the record suggests that Lopez-Vera left the United States voluntarily, that he was not deported, or that his prior deportations or convictions were not valid or were not correctly

United States v. Cordova-Arevalo, 456 F.3d 1229, 1232 (10th Cir. 2006) (holding that the term "felony" in § 1326(b)(1) is defined as "an offense punishable by a maximum term of imprisonment of more than one year")); see also Cal. Penal Code § 461 (stating that conviction for first-degree burglary punishable up to six years).

considered (either together or separately) for the purposes of the guidelines. In sum, Lopez-Vera's conclusory assertions fail to make out a claim.

### D. **Descamps Claim**

Finally, Lopez-Vera has filed two "status reports" raising decisions issued after he filed his § 2255 motion: Moncrieffe v. Holder, 133 S. Ct. 1678 (2013), Descamps v. United States, 133 S. Ct. 2276 (2013), and United States v. Marrero, 743 F.3d 389 (3d Cir. 2014).[8] (Doc. 52 at 5; Doc. 53 at 9–10.) In those status reports, Lopez-Vera generally contends that the trial court erred in determining that his prior California burglary conviction justified a guideline enhancement. The court consequently ordered and received additional briefing. (Docs. 54, 55.) In light of this briefing, the court concludes that Lopez-Vera cannot now raise these issues because they have been barred by his procedural default.

Specifically, as noted above, the PSR identified the burglary conviction as a crime of violence that warranted the sixteen-level offense enhancement. (Doc. 58 ¶ 11.) Lopez-Vera, however, did

---

[8] Marrero addresses whether, under Descamps, a defendant's prior assault and third degree murder crimes under Pennsylvania law qualified as a crime of violence so as to render him a career offender under U.S.S.G. § 4B1.1. 743 F.3d at 394–97. Marrero is therefore inapposite to this case involving a California crime and a different sentencing guideline. More importantly, to the extent Lopez-Vera attempts to raise again his Descamps argument by way of Marrero, that issue has been procedurally defaulted as explained below. Consequently, additional briefing is not in order.

not object at sentencing or on direct appeal. Absent a showing of "cause and prejudice," this double procedural default bars the raising of this argument. See United States v. Frady, 456 U.S. 152, 167 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1992). "Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Frady, 456 U.S. at 167–68. A post-conviction motion is not a direct appeal. "For this reason, [the Supreme Court] ha[s] long and consistently affirmed that a collateral challenge may not do service for an appeal." Id. at 165; see also United States v. Pettiford, 612 F.3d 270, 279 n.7 (4th Cir. 2010) (noting that failure of district court to require a petitioner to show cause for double procedural default meant that the "entire § 2255 process was therefore turned on its head").

Here, Lopez-Vera could have contested his sixteen-level enhancement at sentencing and upon direct review, but did not. Lopez-Vera has not demonstrated cause justifying this failure. Any assertion of ineffective assistance of counsel fails for the reasons explained above. Notably, Lopez-Vera makes no assertion that the novelty of his claim provided cause for his procedural default. Mikalajunas, 186 F.3d at 493 ("The existence of cause

for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel."). As a legal matter, his argument that a § 459 conviction could not constitute a "violent felony" is not so novel as to avoid procedural default. See Descamps, 133 S. Ct. at 2283 ("Our caselaw explaining the categorical approach and its 'modified' counterpart all but resolves this case."); United States v. Davis, 751 F.3d 769, 775 (6th Cir. 2014) ("The Supreme Court in Descamps explained that it was not announcing a new rule, but was simply reaffirming the Taylor/Shepard approach, which some courts had misconstrued."); United States v. Montes, 570 F. App'x 830, 831 (10th Cir. 2014) ("The Descamps opinion simply applied existing doctrine."). In fact, at the time of Lopez-Vera's sentencing, several cases dealt with challenges to characterizing § 459 convictions as a violent felonies. See United States v. Aguila-Montes de Oca, 523 F.3d 1071, 1073 (9th Cir. 2008), opinion withdrawn and superseded on reh'g sub nom. United States v. Aguila-Montes, 553 F.3d 1229 (9th Cir. 2009), on reh'g en banc sub nom. United States v. Aguila-Montes de Oca, 655 F.3d 915 (9th Cir. 2011); Painter, 400 F.3d at 1114 ("The substantive question, then, is whether [a § 459 violation] is 'generic burglary' within the meaning of Taylor."); United States v. Smith, 390 F.3d 661, 662 (9th Cir. 2004) (addressing contention that district court improperly concluded "that an earlier state burglary conviction

[under § 459] qualifies as a 'violent felony' for purposes of the ACCA"), as amended, 405 F.3d 726 (9th Cir. 2005), abrogation recognized by United States v. Marcia-Acosta, No. 13-10475, 2015 WL 1283771, at *7 (9th Cir. Mar. 23, 2015).  Moreover, Lopez-Vera asserts that he knew about this possible argument, further undermining any assertion of novelty.  (Doc. 36 at 14, 32.)  Given that Lopez-Vera has demonstrated no cause justifying his procedural default, the claim is therefore barred.[9]

## E.    Ineffective Assistance Claim Regarding Failure to Move for Downward Departure

Lopez-Vera also asserts that his counsel failed to "move the Court at sentencing for a downward departure according to the 'Fast Track' program, pursuant to U.S.S.G. § 5K3.1 . . . as promised." (Doc. 53 at 4-5, 7.)  A "Fast Track" program is a program used to preserve resources in districts experiencing high caseloads of immigration violations.  See United States v. Perez–Pena, 453 F.3d 236, 238 (4th Cir. 2006).  In such programs, prosecutors seek pre-indictment pleas "by offering defendants lower sentences through charge-bargaining or through motions for downward departure."  Id. To the extent Lopez-Vera is trying to raise a new and additional

---

[9] Even assuming that a Descamps argument is "novel" so as to provide "cause" for default, Descamps is not retroactive on collateral review. See Groves v. United States, 755 F.3d 588, 593 (7th Cir. 2014); Wilson v. Warden, FCC Coleman, 581 F. App'x 750, 753 (11th Cir. 2014); Dunklin v. Wilson, No. CIV. 13-2411 PJS/JSM, 2014 WL 5464250, at *5 (D. Minn. Oct. 27, 2014); Valencia-Mazariegos v. United States, No. 14–cv–338, 2014 WL 1767706, at *3 (W.D. Tex. May 1, 2014) (collecting cases).

claim for ineffective assistance of counsel involving the fast-track program, this claim fails and additional briefing on the issue is unnecessary.[10]

First, there was no fast-track program in use in the Middle District of North Carolina at the time of his sentence, and Lopez-Vera is, therefore, not entitled to any downward departure pursuant to U.S.S.G. § 5K3.1.[11]  Second, even assuming the program was available to him, Lopez-Vera fails to show that he qualified for any fast-track proceeding.  See Perez–Pena, 453 F.3d at 238–39 (describing fast-track program). Finally, as explained above, Lopez-Vera stated under oath at his change of plea that there existed no additional promises — such as a promise from counsel that he would ensure Lopez-Vera's participation in a fast-track program — inducing him to plead guilty.  (Doc. 28 at 7–8.)  For these reasons, this additional ineffective assistance claim fails as well.

---

[10] The United States made no argument that this claim was barred by procedural default or under 28 U.S.C. § 2255(f).

[11] Notably, the Fourth Circuit has also held that defendants cannot insist on lower sentences in non-fast-track districts based on disparities between those districts and the districts where the program is offered, so any argument along these lines also fails.  See Perez–Pena, 453 F.3d at 244.  Other circuit courts are split regarding that holding.  Compare United States v. Arrelucea-Zamudio, 581 F.3d 142, 149 (3d Cir. 2009) ("[W]e believe a judge may also consider the disparate treatment of immigration defendants that is created by fast-track programs in determining whether a Guidelines sentence is greater than necessary under the § 3553(a) factors."), with United States v. Gomez-Herrera, 523 F.3d 554, 562 (5th Cir. 2008) ("[B]ecause any disparity that results from fast-track programs is intended by Congress, it is not 'unwarranted' within the meaning of § 3553(a)(6).").

## III. CONCLUSION

For the reasons stated herein,

IT IS THEREFORE ORDERED that Lopez-Vera's motion vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 35) is DISMISSED WITH PREJUDICE.

Finding neither a substantial issue for appeal concerning the denial of a constitutional right affecting the conviction nor a debatable procedural ruling, a certificate of appealability is not issued.

　　　　　　　　　　　　　　　　/s/　　Thomas D. Schroeder
　　　　　　　　　　　　　　　United States District Judge

April 15, 2015